UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
TONG FU KIANG, *on his own behalf and on
behalf of others similarly situated*, and GANG QIU,

                Plaintiffs,              **MEMORANDUM AND ORDER**

            v.                    18-CV-5256 (RPK) (ARL)

YUMMY ORIENTAL RESTAURANT, INC.,
*doing business as* Yummy Oriental, ORIENTAL
PORT WASHINGTON INC, *doing business as*
Yummy Oriental, YUMMY PORT WASHINGTON
RESTAURANT INC, *doing business as* Yummy
Oriental, TONG HOWE TAN, and KOK HOBI LOOI,

                Defendants.
--------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

      Plaintiff Tong Fu Kiang brings this collective action against five corporate and individual

defendants alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et*

*seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. L. § 650 *et seq.*  After Kiang filed the

complaint, plaintiff Gang Qiu joined the action.  *See* Consent to Become Party in a Collective

Action (Dkt. #29).  The parties have cross-moved for summary judgment.  For the reasons set

out below, defendants' motion for summary judgment is granted as to plaintiffs' federal claims.

The Court declines to exercise supplemental jurisdiction over plaintiffs' state-law claims and

dismisses those claims without prejudice to re-filing in state court.

## BACKGROUND

### I.    Factual Background

      The following facts are taken from plaintiffs' Rule 56.1 statement and relevant portions

of the record and are undisputed unless otherwise noted.

Defendants Oriental Port Washington Inc. and Yummy Port Washington Restaurant Inc. are corporations that operated a restaurant called Yummy Oriental ("Yummy").  *See* Pls.' Rule 56.1 Statement ¶ 2 (Dkt. #47-1).  Defendant Tong Howe Tan became the sole shareholder and officer of those corporations around June 2012.  *See id.* ¶¶ 2-3.

Yummy is a "hole-in-the wall take-out restaurant."  Decl. of Aaron B. Schweitzer Ex. 4 at 115:25-116:4 (Dkt. #47-4).  The restaurant typically employed three or four chefs, a delivery person, and a receptionist.  *Id.* Ex. 4 at 110:6-14; *see id.* Ex. 3 at 16:14-25 (Dkt. #47-3).  Tan paid Yummy employees with cash and checks drawn from a Chase Bank account.  *Id.* Ex. 4 at 60:25-61:23.

Kiang was the head chef at Yummy from 2007 to 2018.  *See* Pls.' Rule 56.1 Statement ¶ 24; Decl. of Aaron B. Schweitzer Ex. 3 at 16:12-17:9.  Qiu worked at Yummy as a delivery person from May 2012 to May 2013 and from December 2015 to August 2018.  Pls.' Rule 56.1 Statement ¶¶ 63-64, 75.  Plaintiffs' Rule 56.1 statement makes factual assertions about Kiang's and Qiu's wages and hours worked at Yummy.  *See, e.g.*, Pls.' Rule 56.1 Statement ¶¶ 27-41, 67-68, 72-74, 78-80, 91-94.  Plaintiffs also assert that Kiang and Qiu did not receive wage notices or wage statements.  *See id.* ¶¶ 8, 43, 70, 74, 81, 87.

Defendants paid Kiang a flat monthly salary in cash.  *Id.* Ex. 4 at 154:8-12; Pls.' Rule 56.1 Statement ¶ 28.  During Qiu's first period of employment at Yummy, Qiu's wages were paid in cash.  Aff. of Gang Qiu ¶ 23 (Dkt. #47-2).  Defendants gave Qiu checks and cash from 2015 to 2018.  *Id.* ¶¶ 44, 60.

Between 2012 and 2017, Yummy's tax returns show gross sales ranging from $110,351 to $252,800.  *See* Decl. of Aaron B. Schweitzer Ex. 18 (Dkt. #47-18).  Deposits in Yummy's checking account during that period exceeded the sales reported on the tax returns.  *See ibid.*

| Year | Reported Sales | Deposits |
|------|----------------|----------|
| 2012 | $110,351.00 | $125,427.00 |
| 2013 | $194,759.00 | $206,393.26 |
| 2014 | $196,446.00 | $213,816.21 |
| 2015 | $206,931.00 | $228,591.60 |
| 2016 | $249,137.00 | $253,256.58 |
| 2017 | $252,800.00 | $274,603.99 |

*Ibid.*

Yummy's tax forms and checking-account statements also reflect that defendants paid employees at least part of their wages in cash. *Compare* Decl. of Aaron B. Schweitzer Ex. 23 (Dkt. #47-23) (reporting $25,450.00 in salaries for 2014) *with id.* Ex. 18 (tallying $22,566.30 in 2014 checks to employees).

## II.      Procedural Background

On September 18, 2018, Kiang filed a complaint on behalf of himself and similarly situated persons bringing claims under the FLSA and the NYLL. *See* Compl. (Dkt. #1).  The complaint alleges that defendants failed to pay overtime wages or spread-of-hours compensation, failed to provide meal periods, failed to maintain adequate records, and did not give plaintiffs wage notices or wage statements. *See id.* ¶¶ 52-86. In July 2019, the Court conditionally certified a collective action, and Gang Qiu consented to join the action a few months later. *See* Order dated July 1, 2019 (Dkt. #27); Consent to Become Party in a Collective Action.

After discovery closed, plaintiffs filed a motion for summary judgment. *See* Pls.' Mem. in Supp. of Mot. for Summ. J. (Dkt. #48) ("Pls.' Mem.").  Defendants then filed a cross-motion

styled as a motion to dismiss and a motion for summary judgment.  *See* Defs.' Mem. in Opp'n and in Supp. of Defs.' Cross-Mot. to Dismiss and Mot. for Summ. J. (Dkt. #50) ("Defs.' Mem.").

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  "A fact is material if it might affect the outcome of the suit under the governing law."  *Ibid.*  The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where "the burden of persuasion at trial would be on the non-moving party," the movant "may satisfy his burden of production" either "(1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim."  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (citation omitted).

In assessing the record, I consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers[.]"  Fed. R. Civ. P. 56(c)(1)(A).  I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."  *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010).  "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for

the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks, alterations, and citation omitted).

## DISCUSSION

Defendants are entitled to summary judgment on plaintiffs' FLSA claims. The Court declines to exercise supplemental jurisdiction over plaintiffs' state-law claims.

## I.      FLSA Claims

Summary judgment is granted to defendants on plaintiffs' FLSA claims because plaintiffs have not put forward evidence from which a reasonable jury could conclude that the FLSA's minimum and overtime wage requirements apply to defendants.

An employer is generally subject to the FLSA's minimum and overtime wage provisions if its employees are "engaged in commerce" or if the employer is "an enterprise engaged in commerce." *See* 29 U.S.C. §§ 206, 207; *Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009); *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007). Those two types of coverage under the FLSA are called "individual" and "enterprise" coverage, respectively. *See Jacobs*, 483 F. Supp. 2d at 257. Coverage is an "element of the cause of action" that a plaintiff must prove to establish liability under the FLSA. *Velez v. Vassallo*, 203 F. Supp. 2d 312, 330 (S.D.N.Y. 2002); *see Manlapaz*, 643 F. Supp. 2d at 300. Plaintiffs' FLSA claims are based on an enterprise-coverage theory, *see, e.g.*, Compl. ¶¶ 12, 15, 26, 53, and plaintiffs do not suggest that an individual-coverage theory also applies, *see* Compl.; Pls.' Mem.; Pls.' Reply (Dkt. #51). Defendants move for summary judgment on the basis that plaintiffs' evidence is insufficient to establish enterprise coverage.[*] Because a rational trier of fact could

---

[*] Defendants also move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and argue that plaintiffs "failed to adequately plead enterprise coverage." *See* Defs.' Mem. at 5 (ECF pagination). While plaintiffs

not find that defendants are an enterprise engaged in commerce within the meaning of the FLSA, defendants' motion for summary judgment is granted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

### A.  Enterprise Coverage

An enterprise is covered by the FLSA only if it is "engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a).  An enterprise is "engaged in commerce or in the production of goods for commerce" if it "(i) has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1).

Plaintiffs have not put forward evidence from which a reasonable jury could find that Yummy's annual gross volume of sales or business was $500,000 or more during any of the years at issue in this case.  Yummy's tax returns from 2012 to 2017 report gross sales of no more than $253,000.  Decl. of Aaron B. Schweitzer Ex. 18; *see Loo v. I.M.E. Rest., Inc.*, No. 17-CV-2558 (ARR) (RER), 2018 WL 6814368, at *5 (E.D.N.Y. Dec. 27, 2018) (explaining that courts in this circuit have relied on tax returns in deciding enterprise coverage on summary judgment); *Amparo v. Ink Point Tattoo*, No. 13-CV-7232 (LGS), 2015 WL 224360, at *3 (S.D.N.Y. Jan 15, 2015).

---

argue that defendants' motion to dismiss must be converted into a motion under Rule 12(c) or Rule 56, *see* Pls.' Reply at 7, there is no need to do so because defendants have moved for summary judgment.

6

Plaintiffs have not offered evidence from which a reasonable jury could find that those tax returns vastly underreported the business's sales.  Plaintiffs observe that Yummy's bank accounts "show higher yearly deposits than are reported on the tax forms."  Pls.' Mem. at 13. Yet the discrepancy between reported sales and bank deposits was no more than $21,803.99 per year.  In the year with the greatest discrepancy, 2017, the discrepancy amounted to less than ten percent of Yummy's reported sales.

| Year | Reported Sales | Deposits | Amount Underreported | Percentage Underreported |
|------|---------------|----------|---------------------|--------------------------|
| 2012 | $110,351.00 | $125,427.00 | $15,076.00 | 13.66% |
| 2013 | $194,759.00 | $206,393.26 | $11,634.26 | 5.97% |
| 2014 | $196,446.00 | $213,816.21 | $17,370.21 | 8.84% |
| 2015 | $206,931.00 | $228,591.60 | $21,660.60 | 10.47% |
| 2016 | $249,137.00 | $253,256.58 | $4,119.58 | 1.65% |
| 2017 | $252,800.00 | $274,603.99 | $21,803.99 | 8.62% |

*See* Decl. of Aaron B. Schweitzer Ex. 18.  Considering that neither the tax returns nor the bank account statements evidence more than around $250,000 in gross sales per year, *see ibid.*, neither set of records creates a genuine dispute of material fact about whether Yummy had annual sales of at least $500,000 per year.

Plaintiffs next assert that the bank-account records are "incomplete" because "they do not include cash payments made to . . . [p]laintiffs or other employees, or cash intake that was not deposited into the bank account."  Pls.' Mem. at 13.  But plaintiffs have not offered evidence from which reasonable jurors could infer that defendants failed to deposit the hundreds of thousands of dollars that would be required to reach the FLSA threshold.  To find that unreported cash wages brought Yummy up to $500,000 in gross sales in Yummy's highest grossing year,

the jury would have to infer that a business that employed five or six workers in total, *see* Decl. of Aaron B. Schweitzer Ex. 4 at 110:6-14; *id.* Ex. 3 at 16:14-25, used exclusively unreported cash revenue to pay at least six employees wages close to the highest salary ever earned by head chef Kiang—$3,600 per month, Pls.' Rule 56.1 Statement ¶ 40. (($500,000 – 274,603.99) / 6 = $37,566.00; $37,566.00 / 12 = $3,130.50).  No evidence supports that inference.

Nor have plaintiffs pointed to other evidence that defendants failed to deposit hundreds of thousands of dollars in receipts.  Gang Qiu's statements about deliveries, on which plaintiffs rely, fall far short of supporting an inference that Yummy's gross sales substantially exceeded the amount that the business reported.  Plaintiffs claim that Qiu "testified that he made between 60 and 80 deliveries in a day, which is consistent with a business taking in more than $500,000.00 per year."  Pls.' Mem. at 13.  But the Court has been unable to identify any such assertion in the evidentiary submissions.  *See* Aff. of Gang Qiu.  Instead, Qiu's affidavit states that from 2012 to 2013, Qiu "delivered on average about 30 orders . . . on full days[] and delivered on average about 15 orders . . . on half days."  *Id.* ¶ 19.  Likewise, from 2015 to 2017 and from January 2018 to August 2018, Qiu "delivered on average about 30 orders . . . per day."  *Id.* ¶¶ 40, 56.  In any event, plaintiffs have not identified an average meal price that would permit a calculation of defendants' revenue based on the number of orders that Qiu described.  *See Shen v. John Doe Corp.*, No. 16-CV-2015 (GBD) (JCF), 2016 WL 7217850, at *3 (S.D.N.Y. Dec. 13, 2016) (calculating revenue in part based on number of deliveries per day multiplied by an average price), *report and recommendation adopted by* 2017 WL 111746 (S.D.N.Y. Jan. 11, 2017).  Assuming that Qiu made thirty deliveries a day, seven days a week, the average order would have to be around $45 for Qiu's deliveries to reflect $500,000 in gross sales per year.

($500,000 / (30 * 365) = $45.66).  Plaintiffs point to no evidence in the record to support that estimate.

At most, plaintiffs' arguments raise "metaphysical doubt" about defendants' gross sales. *Zenith Radio Corp.*, 475 U.S. at 586-87; *cf. Jun Chen v. Sushi 21 NY Inc.*, No. 17-CV-6153 (JGK), 2018 WL 6618174, at *4 (S.D.N.Y. Dec. 18, 2018) ("[P]laintiff[s] [have] failed to produce any concrete and affirmative evidence to challenge the figures in the defendant[s'] corporate tax returns." (internal quotation marks and citation omitted)).  Since plaintiffs have not pointed to evidence from which jurors could infer that defendants' gross sales or business done amounted to at least $500,000 per year, plaintiffs' evidence is insufficient to support enterprise coverage.  *See* 29 U.S.C. § 203(s)(1).  Defendants' motion for summary judgment on plaintiffs' FLSA claims is granted.

### B.    Compliance with Local Rules

I decline to grant summary judgment to plaintiffs, or to deny summary judgment to defendants, because defendants failed to comply with certain local rules.

Plaintiffs argue that their summary judgment motion must be granted because defendants' opposition papers did not comply with Local Rule 56.1.  *See* Pls.' Reply at 5-6.  That rule requires a party opposing summary judgment to respond to each paragraph of the movant's statement of material facts with a "correspondingly numbered paragraph" responding to the movant's assertions.  Local Civ. R. 56.1(b).  Ordinarily, the paragraphs that are not "specifically controverted by a correspondingly numbered paragraph" in the opposing party's statement "will be deemed to be admitted for purposes of the motion."  Local Civ. R. 56.1(c).  But a district court "may not rely solely upon the failure to controvert assertions made in a Rule 56.1 statement" as a basis for granting summary judgment "if those assertions are not supported in the record."  *Davis v. Town of Hempstead*, No. 14-CV-903 (JMA) (GRB), 2019 WL 235644, at *3

(E.D.N.Y. Jan. 16, 2019); *see Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). As explained above, plaintiffs have not provided evidence to support their assertion that because Yummy "under-reported its gross annual revenue[] and paid workers partially or wholly off the books," Pls.' Rule 56.1 Statement ¶ 23, Yummy's gross sales were $500,000 or more. Accordingly, defendants' failure to comply with the local rule does not justify granting summary judgment to plaintiffs.

Plaintiffs are equally mistaken in contending that defendants' failure to file their own Rule 56.1 Statement means that defendants' summary judgment motion should be denied. *See* Pls.' Reply at 9-10. Defendants failed to comply with Local Rule 56.1(a) because they did not include a "statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). But district courts have "broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). "[A] district court may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file a Local Rule 56.1 statement." *Genova v. County of Nassau*, 851 F. App'x 241, 244 (2d Cir. 2021) (summary order) (internal quotation marks omitted) (quoting *Holtz*, 258 F.3d at 73).

I have reviewed the evidence relevant to enterprise coverage instead of simply denying defendants' motion. *See, e.g.*, *Gilani v. GNOC Corp.*, No. 04-CV-2935 (ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) ("[T]he wiser path . . . is to make a determination on the record."). The parties appear to discuss essentially the same evidence with respect to enterprise coverage, *see* Pls.' Mem. at 13; Defs.' Mem. at 6-8, and both the Court and the plaintiffs are able to discern the factual evidence upon which defendants are relying, *see Myers v.*

*Lennar Corp.*, No. 08-CV-2799 (JFB) (WDW), 2010 WL 5491112, at *1 n.1 (E.D.N.Y. Dec. 30, 2010).   "[T]he evidentiary basis for . . . [defendants'] motion is straightforward and clear," *United States v. Jones*, No. 11-CV-2869 (JFB), 2015 WL 332115, at *1 n.1 (E.D.N.Y. Jan. 23, 2015); *see Reza v. Khatun*, No. 09-CV-233 (MKB), 2013 WL 596600, at *2 (E.D.N.Y. Feb. 15, 2013), and review of the record does not "impose[] a significant burden upon the Court," *KBM World Wide, Inc. v. Hangover Joe's Holding Corp.*, No. 15-CV-7254 (SJF) (GRB), 2017 WL 685606, at *3 (E.D.N.Y. Feb. 1, 2017) (citation omitted), *report and recommendation adopted by* 2017 WL 680418 (E.D.N.Y. Feb. 21, 2017).   In these circumstances, I have overlooked defendants' failure to comply with the Rule 56.1 Statement requirement in the Local Rules.

## II.      Discovery Sanctions

Finally, I decline plaintiffs' request that they be awarded summary judgment as a sanction under Federal Rule of Civil Procedure 37(b)(2)(A) for defendants' failure to produce transcripts from certain third-party depositions that were taken in the presence of plaintiffs' counsel.   *See* Pls.' Mem. at 2-3 & n.1; Pls.' Reply at 6-7.   According to plaintiffs, Judge Feuerstein directed defendants in March 2020 to provide plaintiffs with transcripts from Kiang's deposition and the depositions of two non-parties.   *See* Order dated Mar. 10, 2020; Pls.' Mot. to Compel (Dkt. #42). The Court stated that failure to comply "may result in entry of judgment" against defendants.   Order dated Mar. 10, 2020.   Defendants produced Kiang's transcript but not the others.   *See* Pls.' Mem. at 3.

Rule 37(b)(2)(A) provides that when a party "fails to obey an order to provide . . . discovery," the court may issue "further just orders," including "rendering a default judgment against the disobedient party."   Fed. R. Civ. P. 37(b)(2)(A)(vi).   "[T]he text of the rule requires only that the district court's orders be 'just,' . . . and . . . the district court has wide discretion in imposing sanctions under Rule 37."   *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123,

144 (2d Cir. 2010) (internal quotation marks and citation omitted).  Some considerations that guide the exercise of discretion under Rule 37 include "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (citation omitted). Those factors are not exclusive, and courts may look at other relevant facts to decide what sanctions, if any, would be just under Rule 37. *See World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012). Dispositive sanctions like plaintiffs seek are appropriate only in "'extreme situations,' as 'when a court finds willfulness, bad faith, or any fault on the part of the' noncompliant party," *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 451 (2d Cir. 2013) (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)); *see World Wide Polymers,* 694 F.3d at 159 (analyzing discovery sanctions that are "akin to dismissal" under the framework governing dismissal sanctions).

Granting summary judgment to plaintiffs would not be a "just" sanction for defendants' failure to provide plaintiffs with copies of several non-party depositions.  Fed. R. Civ. P. 37(b)(2)(A).  As plaintiffs admit, defendants "did not rely to any extent on [those] deposition transcripts in their summary judgment motion."  Pls.' Reply at 7.  And plaintiffs have not suggested that the depositions would have aided them in making their own case.  Although plaintiffs' counsel was present for the depositions in question, plaintiffs have not identified any helpful testimony that would be reflected in the transcripts.  Indeed, plaintiffs do not even explain who the witnesses were or what role they played in the relevant events.  Plaintiffs' failure to establish relevance counsels against awarding dispositive sanctions.  *Cf. Steptoe v. City*

12

*of Syracuse*, 513 F. App'x 8, 10 (2d Cir. Feb. 26, 2013) (summary order) (no abuse of discretion in denying discovery sanctions concerning video footage that "had no bearing on the relevant issues").  Moreover, plaintiffs have not shown why less severe sanctions—like preclusion of the deposition testimony or sanctions imposed on counsel directly—would be "futile."  *Guggenheim*, 722 F.3d at 451.  To the contrary, plaintiffs acknowledge that "the lesser sanction of preclusion of [the third-party witnesses'] testimony may be sufficient."  Pls.' Reply at 7.  Accordingly, I decline plaintiffs request that I grant summary judgment against defendants as a discovery sanction.

## III.     Supplemental Jurisdiction

I decline to retain jurisdiction over plaintiffs' state-law claims.  *See* 28 U.S.C. § 1367(c). Four factors bear on whether it is appropriate to exercise supplemental jurisdiction: "judicial economy, convenience, fairness, and comity."  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018).  As a general matter, where "a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well."  *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010); *see Pension Benefit Guar. Corp. ex rel. St Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013); *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006).  Plaintiffs have articulated no persuasive reason to depart from the usual practice here.  This case "is not on the eve of trial" or likely even "the eve of the eve of trial" and plaintiffs have identified no reason why they could not re-file their state-law claims in state court.  *Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 393 (S.D.N.Y. 2013) (citation omitted).  Accordingly, it is not now inconvenient, unfair, or uneconomical for the parties to try their state-law claims in state court.  *See Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d at 727.

13

**CONCLUSION**

Defendants' motion for summary judgment is granted with respect to plaintiffs' federal claims.  Plaintiffs' state-law claims are dismissed without prejudice to re-filing in state court. The Clerk of the Court is respectfully directed to close the case.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: February 18, 2022
Brooklyn, New York

14